IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–02220–REB–KMT

DeANGELO HORTON,

     Plaintiff,

v.

EXECUTIVE DIRECTOR ARISTEDES ZAVARAS,
AVCF WARDEN MIKE ARELLANO,
AVCF STAFF MEMBER JOHN DOE (Warden Arellano's Designee),
CSP WARDEN SUSAN JONES,
CSP STAFF MEMBER JOHN DOE (Warden Jones' Designee),
AVCF STAFF MEMBER REEVES,
AVCF STAFF MEMBER GRAHAM,
AVCF STAFF MEMBER KURTZ,
AVCF STAFF MEMBERS JOHN AND/OR JANE DOES (Committee Members for 30 Day Reviews),
CSP CASE MANAGER DEFUSCO,
CSP COMMITTEE CHAIRMAN OLSON, and
CSP STAFF MEMBERS JOHN AND/OR JANE DOES (Committee Members for 30 Day Reviews),
all defendants in their official and individual capacities,

     Defendants.

_____

## AMENDED RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

     This matter is before the court on Defendants Zavaras, Jones, Reeves, Graham, Kurtz,

Defusco, and Olsons'[1] (hereinafter "Defendants") "Motion to Dismiss." (Doc. No. 17, filed Jan.

---

     [1] Because he is no longer employed by the Colorado Department of Corrections ("CDOC"), Defendant Arellano, the only additional "named" defendant, is not addressed in Defendants' Motion. (Mot at 1 n.1.) However, this court has recommended that Defendant Arellano be dismissed as a defendant, pursuant to Fed. R. Civ. P. 4(m), for failure to effect

4, 2010 [hereinafter "Mot."].) Plaintiff filed what the court construes to be his Response to Defendants' Motion on March 31, 2010. (Doc. No. 30 [hereinafter "Resp."].) Defendants did not file a reply. Accordingly, the Motion is now ripe for the court review and recommendation.

## I.    STATEMENT OF THE CASE

The following facts are taken from Plaintiff's "Prisoner Complaint" (Doc. No. 3, filed Sep. 16, 2009 [hereinafter "Compl."]) and the parties' submissions with respect to this Recommendation. Plaintiff was originally housed in the general population of the Arkansas Valley Correctional Facility ("AVCF") of the CDOC. (Compl. at 4.)[2] On June 2, 2008, Plaintiff was removed from the general population and placed into administrative segregation based on a suspicion that he participated in a conspiracy to introduce drugs into AVCF. (*Id.* at 3.) On June 23, 2008, a hearing was held at which Plaintiff was presumably found guilty of the alleged conduct and was "classified as administrative segregation." (*See id.*) Thereafter, on September 8, 2008, Plaintiff was transferred to the Colorado State Penitentiary ("CSP") where he remained in administrative segregation until June 15, 2009. (*Id.*) Thus, in total, Plaintiff alleges that he remained in administrative segregation for 377 days. (*Id.*) Plaintiff was apparently removed from administrative segregation on June 15, 2009; Plaintiff concludes that this action was an acknowledgment that his stay in segregation was unjust. (*Id.* at 4.)

---

service. (*See* Recommendation of a United States Magistrate Judge, Doc. No. 31, entered Apr. 1, 2010.)

[2] Because Plaintiff has only sporadically numbered the pages of his Complaint, the court refers instead to the page numbers of the document scanned by the Clerk of Court.

Plaintiff alleges that the conditions of his administrative segregation were as follows. First, Plaintiff alleges that he was confined to his cell twenty-three hours a day, five days a week, with only one hour permitted for exercise. (*Id.* at 6–7.) The other two days a week, he was confined to his cell for the full twenty-four hours of each day. (*Id.*) As such, Plaintiff was required to take meals in his cell alone. (*Id.* at 6.) Plaintiff also alleges that the lights in his cell remained on at all times. (*Id.* at 6.) Additionally, Plaintiff alleges that because of his administrative segregation, his visitation rights with his wife and family were suspended indefinitely. (*Id.* at 4.) And finally, as a further condition of his administrative segregation, Plaintiff was rendered ineligible for earned time credits. (*Id.* at 5.)

In his Complaint, Plaintiff claims, pursuant to 42 U.S.C. § 1983, that the conditions and duration of his administrative segregation violated his due process rights under the Fourteenth Amendment of the United States Constitution. (*Id.* at 4–10.) More specifically, Plaintiff alleges that the duration and conditions of his confinement in administrative segregation "imposed an atypical and significant hardship in relation to the ordinary incidents of prison life." (*Id.* at 6–7). Consequently, Plaintiff claims that he was entitled to procedural due process protections, which he alleges Defendants failed to provide him for two reasons. First, Plaintiff claims that Defendants violated his right to due process because the notice he received prior to the hearing that resulted in his administrative segregation was "so vague that there was no way [he] could have formulated any possible defense" and because "there was no evidence of any wrongdoing . . . or participation in any conspiracy" with respect to the charges against him. (*Id.* at 7.) Second, Plaintiff claims that, although Defendants provided periodic reviews of his

administrative segregation status, these reviews "were absolutely meaningless" because they provided him "no notice and no opportunity to be heard" and because "they all [said] the same thing," allegedly reflecting "a lack of consideration by the committee members." (*Id.* at 8–9.)

In their present Motion, Defendants move to dismiss Plaintiff's Complaint on a number of grounds. In his Response, Plaintiff does not directly contest any of Defendants' arguments, but instead generally maintains that he did not do anything to justify his confinement in administrative segregation.

## II.  *LEGAL STANDARDS*

### A.  **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.

4

1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.     Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." F. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

## III.    ANALYSIS

Defendants move to dismiss Plaintiff's claims on grounds that (1) Plaintiff failed to allege that Defendants Zavaras and Jones personally participated in the violations of Plaintiff's constitutional rights; (2) Plaintiff's claims against Defendants Reeves, Graham, Kurtz, Defusco, and Olson are barred because Plaintiff failed to demonstrate that he received a "favorable termination" of his administrative segregation proceedings as required by *Heck v. Humphery,* 512 U.S. 477, 487 (1994); (3) Plaintiff fails to state a claim for relief because he has not

demonstrated that he had a protected liberty interest in avoiding transfer to administrative segregation; and finally, (4) even if Plaintiff has stated a claim pursuant to § 1983, Defendants are nonetheless entitled to qualified immunity for actions taken in their individual capacities.

### A.  *Claims Against Defendants Zavaras and Jones*

Defendants first claim that Plaintiff's claims against Defendants Zavaras and Jones should be dismissed because Plaintiff fails to allege that either Defendant Zavaras or Jones personally participated in the violations of Plaintiff's constitutional rights as alleged in his Complaint.  (Mot. at 3–5.)

### 1.  *Personal Participation*

Personal participation is an essential allegation in a § 1983 civil rights action.  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  "Because vicarious liability is inapplicable to  . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S.Ct. at 1948.

The court first finds Plaintiff has failed to show that Defendant Zavaras personally participated in any alleged misconduct.  Plaintiff's only argument that Defendant Zavaras violated Plaintiff's constitutional rights is that, as the Executive Director of the CDOC,

Defendant Zavaras "has a statutorily established supervisory liability to ensure due process to [administratively segregated] offenders" and otherwise has a duty to "manage, supervise, and control the correctional institutions." (Compl. at 10.) However, it is well established that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). "Rather, '[p]ersonal participation is an essential allegation in a § 1983 claim.'" *Mitchell,* 80 F.3d at 1441 (quoting *Bennett,* 545 F.3d at 1262–63 (10th Cir. 1976). Plaintiff has failed to demonstrate that Defendant Zavaras personally violated Plaintiff's due process rights, or even that Defendant Zavaras knew of the alleged violations. Accordingly, the court finds that Plaintiff fails to state a claim for relief against Defendant Zavaras.

The court similarly finds that Plaintiff fails to allege personal participation against Defendant Jones. Plaintiff's only argument that Defendant Jones personally violated his due process rights is that Defendant Jones "personally and through her designee violated [his] 14th Amendment right to due process" and that she deprived Plaintiff of due process "by not overturning the decision of the aforementioned reviews" of his disciplinary convictions. (Compl. at 10.) However, Plaintiff does not allege that Defendant Jones personally evaluated any of the periodic reviews of his administrative segregation. Moreover, even assuming that Defendant Jones did approve the periodic reviews of Plaintiff's disciplinary conviction, Plaintiff fails to allege that Defendant Jones was on notice that those reviews allegedly deprived Plaintiff of his due process rights.

Plaintiff finally argues that Defendant Jones deprived him of due process "by enforcing OM 650-100 which denies due process as a matter of policy." (*Id..*) "The establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative link' to the constitutional violation." *Davis v. City of Aurora,* ___ F. Supp. 2d ____, 2010 WL 1348450, at *17 (D. Colo. Mar. 31, 2010) (citing *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988)). However, Plaintiff makes only conclusory allegations that OM 650–100[3] denies due process as a matter of policy because it is "implemented independent of any due process procedures, protections, or hearings." (Mot. at 8.) Indeed, without further factual averments, it is unclear from Plaintiff's allegations whether OM 650–100 is implemented *in lieu of* an inmate's due process protections, or merely *in addition to* those protections. As such, the court finds that Plaintiff's allegations are insufficient to state a plausible claim for relief. *Twombly,* 550 U.S. at 570. Accordingly, the court finds that Plaintiff fails to state a claim for relief against Defendant Jones.

Altogether, the court finds that Plaintiff fails to allege that either Defendant Zavaras or Defendant Jones personally participated in the alleged violations of his constitutional rights. Accordingly, Plaintiff's claims against these defendants are properly dismissed.

---

[3] Although Plaintiff has not attached it for the court's review, the court relies on prior decisions from this district and assumes that OM 650-100 refers to CDOC Operational Memorandum 650-100. *Borrego v. Mathews,* No. 08–cv-00735–WYD–MJW, 2009 WL 812158, at *8 (D. Colo. Mar. 26, 2009).

### B.    Claims Against Defendants Reeves, Graham, Kurtz, DeFusco, and Olson

As to Plaintiff's claims against the remaining defendants—Defendants Reeves, Graham, Kurtz, DeFusco, and Olson—Defendants argue that claims against these defendants should be dismissed because (1) Plaintiff has failed to allege that he received a "favorable termination" of his disciplinary conviction that resulted in his administrative segregation; (2) that Plaintiff does not have a liberty interest in being placed in a particular DOC facility; and finally (3) that, even if Plaintiff does state a valid claim pursuant to § 1983, Defendants Reeves, Graham, Kurtz, Defusco, and Olson are entitled to qualified immunity.

### 1.    *Favorable Termination Requirement Pursuant to* **Heck v. Humphery,** *512 U.S. 477 (1994)*

Defendants first argue that Plaintiff's due process claims are barred because Plaintiff failed to obtain a 'favorable termination" of the disciplinary conviction that resulted in his administrative segregation, loss of earned time credits, and loss of visitation rights, as required by *Heck v. Humphery,* 512 U.S. 477, 847 (1994), prior to bringing the present suit. (Mot. at 5–8.) More specifically, Defendants point particularly to Plaintiff's allegations that his confinement in administrative segregation resulted in his ineligibility for earned time credits, and contend that, unless the conviction or sentence has previously been invalidated, a prisoner may not bring a § 1983 claim where resolving the prisoner's claims would necessarily or independently implicate the duration of the prisoner's confinement. (*Id.*)

*Heck* involved a § 1983 claim arising out of alleged unlawful acts by state prosecutors and police officers which led to the plaintiff's arrest and ultimate conviction. 512 U.S. at 479.

In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The Supreme Court's holding in *Heck* has also been extended to prison disciplinary convictions that deprive a prisoner of good time credits. *See Edwards v. Balisok*, 520 U.S. 641, (1997). However, only claims which "necessarily implicate the fact or duration of" a prisoner's confinement are barred; claims that relate solely to a prisoner's "conditions of incarceration" are not subject to *Heck's* favorable termination requirement. *Torres v. Fauver*, 292 F.3d 141, 145 (3d Cir. 2002). That is, the "assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Muhammad v. Close*, 540 U.S. 749, 752 n.1 (2004).

Here the court is persuaded by the reasoning in other decisions from this district that the threshold issue in determining whether *Heck's* favorable termination requirement applies is whether Plaintiff's due process claim would "automatically entitle [him] to accelerated release." *Julien v. Milyard,* No. 07–cv-02176–REB–KLM, 2008 WL 5663941, at *3 (D. Colo. Sep. 15, 2008); *Thompson v. McCullar,* No. 08–cv–02000–REB–KLM, 2009 WL 2913207 (Sep. 8, 2009). *See also Baldauf v. Hyatt,* 120 F. App'x 288, 289 (10th Cir. 2005) ("Whether *Heck* applies depends on whether deprivation of good-time or earned-time credits *necessarily* affects the duration of a Colorado prisoner's confinement") (emphasis added).

The effect of disciplinary proceedings on good time or earned time credits is a matter of state law or regulation. *Muhammad,* 540 U.S. at 754. Thus, Defendants are correct that earned time credits reduce the full term for which an inmate is sentenced. *See*, *e.g.,* Colo. Rev. Stat. 17–22.5–402(2). And CDOC Administrative Regulation 550-12(IV)(F)(1)[4] does provide that inmates placed in maximum administrative segregation are not eligible for earned time credits.

However, earned time credits are only awarded to offenders who "demonstrate substantial and consistent progress in categories such as work and training, group living, participation in counseling and group sessions, educational programs, and progress towards goals established by the CDOC's diagnostic programs." Colo. Rev. Stat. § 17–22.5–302(1)–(2). And here, Plaintiff notably does not allege that any previously accrued earned time credits were revoked; rather he alleges only that his *eligibility* for earned time credits was lost for over a year. (Compl. at 5); *Fistell v. Neet,* 125 F. App'x 219, 224 (10th Cir. 2005) (holding that *Heck's* "favorable termination" requirement does apply where a plaintiff seeks restoration of earned time credits actually accrued, but subsequently revoked). Consequently, Plaintiff's claim cannot be construed to assert that any earned time credits were actually eliminated by Plaintiff's placement in administrative segregation. Rather, because earned time credits appear to be awarded only on a discretionary basis, even when they are otherwise available to an inmate, Plaintiff's loss is merely theoretical, and not an actual loss.

---

[4] The court may take judicial notice of agency rules and regulations. *Ray v. Aztec Well Services Co.,* 748 F.2d 888, 889 (10th Cir. 1984).

Moreover, to the extent that Defendants contend that *Heck* bars Plaintiff's claims generally, Defendants are simply incorrect as Plaintiff clearly challenges the conditions and duration of his administrative segregation notwithstanding any impact on his eligibility for earned time credits. *Slack v. Jones,* 348 F. App'x 361, 364 (10th Cir. 2009) (to the extent an inmate "cha1lenge[s] the conditions of his confinement and loss of privileges, *Heck* and *Edwards* do not apply"). Accordingly, because a favorable resolution of Plaintiff's claims "'would not automatically entitle [him] to accelerated release,'" the court finds that Plaintiff's claims are not barred pursuant to *Heck. Thompson,* 2009 WL 2913207, at *4 (quoting *Clarke v. Stadler,* 121 F.3d 222, 226 (5th Cir. 1997), *vacated in part on other grounds by Clark v. Stalder,* 154 F.3d 186 (5th Cir. 1998)).

### 2. *Procedural Due Process Claims*

The court now turns to the merits of Plaintiff's Complaint. In both of his claims, Plaintiff alleges Defendants violated his Fourteenth Amendment rights by placing him in administrative segregation and subjecting him to various conditions of confinement without constitutionally adequate procedures. (Compl. at 4.) Defendants contend that Plaintiff has failed to state a claim for procedural due process violations. (Mot. at 8–11.) To maintain his due process claim, Plaintiff must prove two elements: (1) that a recognized liberty or property interest has been interfered with by Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989).

### a.    *Protected Liberty Interest*

Defendants argue that Plaintiff's claims fail to establish that the alleged conduct of Defendants Reeves, Graham, Kurtz, DeFusco, and Olson deprived him of a liberty interest that would entitle him to procedural protections under the Due Process Clause.  More specifically, Defendants generally argue that "segregation is something that each inmate should expect" and that segregation, by itself, does not amount to the "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" necessary to give rise to a protected liberty interest.  (Mot. at 8–9.)  Finally, Defendant argue that each of the more specific "deprivations" of which Plaintiff complains are not protected liberty interests under prevailing case law.  (*Id.* at 10–11.)

A liberty interest may arise where the conditions or duration of confinement in administrative segregation impose an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prison life.  *See Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination."  *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit requires that courts inquire into the particular conditions of confinement before concluding whether such conditions impose an atypical and significant hardship on an inmate.  *See Fogel v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citations

omitted).  In making this determination, the Tenth Circuit has identified several non-dispositive

factors to consider in evaluating an the particular nature of an inmate's administrative

segregation.  These factors include whether (1) the segregation relates to and furthers a

legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement

are extreme; (3) the placement increases the duration of confinement; and (4) the placement is

indeterminate.  *See DiMarco*, 473 F.3d at 1342.

Altogether, Defendants' sweeping statement that "[p]lacement in administrative

segregation is not the 'sort of atypical, significant deprivation that would give rise to a liberty

interest" (Mot. at 8–9) falls well short of justifying dismissal because it fails to address the

particular circumstances of Plaintiff's confinement in administrative segregation.  *See Payne v.*

*Friel*, 266 F. App'x 724, 728 (10th Cir. 2008).  Indeed, despite the prevalence of the *DiMarco*

factors in recent decisions from this district, *see, e.g.,  Dodge v. Shoemaker*, ___ F. Supp. 2d

____, 2010 WL 924249, at *10 (Mar. 11, 2010), Defendants have entirely failed to analyze

Plaintiff's claims under these factors.  Nonetheless, the court addresses these factors in turn to

determine whether Defendants are correct that this case is simply one in which no liberty interest

is implicated.

As to the first factor, Plaintiff alleges that he was put into segregation for his participation

"in a conspiracy to introduce drugs into the AVCF."  (Compl. at 4.)  This contention at least

facially suggests that his segregation was not arbitrary, although Plaintiff contests that there was

evidence to support his involvement in a drug conspiracy.  *Thompson v. Rios,* No. 07-cv-

00025–PAB–KLM, 2010 WL 749859, at *8 (D. Colo. Mar. 2, 2010).

Turning to the second factor, Plaintiff sets forth a number of reasons as to why his administrative segregation was extreme. Plaintiff alleges that during his administrative segregation he was "locked down for 23 hours a day in a solitary cell . . . [with] a light that remained on at all times." (Compl. at 6.) He alleges that his meals were "taken in his cell alone rather than [in] a common eating area" and that any exercise was "limited to one hour[,] five days a week" and that he was in 24 hour lock-down the other two days of each week. (*Id.* at 6–7.) Finally, Plaintiff further alleges that he was allowed no visitations rights whatsoever, including from his wife, and that, as outlined above, he was ineligible for earned time credits. (*Id.* at 7.)

Defendants argue that none of these factors amounts to the atypical and significant hardship necessary to implicate a liberty interest. (Resp. at 8–11.) Defendants are at least facially correct that prison officials have broad discretion in regulating an inmate's visitation rights, *see Jenner v. McDaniel,* 123 F. App'x 900, 905 (10th Cir. 2005), and that Colorado inmates do not have a liberty interest in earned time credit, *Templeman v. Gunter,* 16 F.3d 367, 369 (10th Cir. 1994); *People v. Alderman*, 720 P.2d 1000, 10001–02 *(*Colo. App. 1986). However, the court notes that while Defendants attempt to view each of Plaintiff's alleged deprivations in isolation, it is clear that any due process claim based on an inmate's segregation is highly-fact dependent and the factors should be "viewed in their totality." *Dodge,* ___ F. Supp. 2d ____, 2010 WL 924249, at *10. Even more relevantly, in *Wilkinson v. Austin,* 545 U.S. 209 (2005), the Supreme Court determined that indefinite placement in solitary confinement, where "almost all human contact is prohibited" and which disqualifies inmates from parole consideration, gave rise to a liberty interest. Although no

parole considerations are present here, the combined effect of the conditions alleged in Plaintiff's Complaint—including the limitations on Plaintiff's visitation rights, the hours he spent per day in isolation, having to take his meals alone in his cell, and the amount of exercise he was permitted—could arguably qualify as "extreme." *See Allmon v. Bureau of Prisons,* No. 08–cv–01183–ZLW–CBS, 2010 WL 2163773, at *5 (D. Colo. May 26, 2010).

Whether Plaintiff can establish these alleged conditions of confinement under "the more rigorous standards of summary judgment remains to be seen." *Silverstein v. Fed. Bur. of Prisons,* ___ F. Supp. 2d. ____, 2010 WL 1258032, at *13 (D. Colo. Mar. 23, 2010). However, at this point in the litigation, the court finds it prudent to develop an evidentiary record of whether the conditions under which Plaintiff was held in administrative segregation might be extreme, rather than preemptively dismissing them based solely on the pleadings. Accordingly, the court finds that, at this point, this factor weighs in Plaintiff's favor.

As to third factor, it is clear that Plaintiff's placement in administrative segregation did not increase the duration of his confinement. Although Plaintiff alleges his segregation made him ineligible for earned time credits, under Colorado law, and as outlined above, earned time credits are essentially discretionary, based on good behavior or participation in certain programs. *See, e.g.,* Colo. Rev. Stat. 17–22.5–302(1)–(2). As such, any argument that Plaintiff's overall confinement was increased is, at best, speculative. Therefore, this factor cuts in Defendants' favor.

Finally, turning to the fourth factor, Plaintiff alleges that his administrative segregation was "imposed for an indefinite period of time," which subsequently totaled 377 days. (Compl. at 7.) However, Plaintiff seemingly concedes that he has since been released from administrative

segregation and ostensibly returned to the general prisoner population, which arguably cuts against concluding that his administrative segregation status was indefinite. Indeed, most of the decisions that have found an inmate's placement in administrative segregation to be indeterminate have based that conclusion on the fact that the inmate was still in segregation at the time of decision. *See, e.g., Stine v. Lappin,* No. 07–cv–01839–WYD–KLM, 2009 WL 103659, at *10 (D. Colo. Jan. 14, 2009). Moreover, courts have found that any indefinite nature of an inmate's administrative segregation status may be largely mitigated if the inmate is provided periodic reviews of his placement. *See, e.g., Lefthandbull v. Hartley,* No. 09–cv–01345–CBS–KLM, 2010 WL 1930250, at *9 (D. Colo. Apr. 20, 2010); *Hunt v. Sapien,* 480 F. Supp. 2d 1271, 1277 (D. Kan. 2007) (placement was not indefinite where it was reviewed weekly for the first 60 days of confinement, and subsequently reviewed monthly, after 180 days, and annually). However here, Plaintiff argues that the periodic reviews of his administrative were "meaningless" and arbitrary. (Compl. at 8.) If Plaintiff is correct, then there is certainly a colorable argument that Defendants' provision of periodic, but meaningless, reviews of his status should not weigh against a conclusion that his segregation was indeterminate.

Altogether, in light of the ambiguity outlined above, the court finds that it would be prudent to abstain from evaluating the weight of the fourth *DiMarco* factor until the circumstances of Plaintiff's administrative segregation are better understood through an evidentiary record. As such, the court concludes that, at this point, this final factor is inconclusive.

The court must next consider the duration of Plaintiff's placement in administrative segregation in its own right. This is because an extended confinement to administrative segregation can, of itself, constitute an atypical and significant hardship. *See Payne*, 266 F. App'x at 728 (citing

*Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999); *Freeman v. Watkins,* No. 06–cv–00405–MSK–KMT, 2010 WL 1790427, at *5 n.9 (D. Colo. May 4, 2010). Unfortunately, Tenth Circuit decisions on when the duration of an inmate's confinement in administrative segregation alone becomes atypical and significant do not provide clear guidance. In *Payne*, upon reversing the district court's dismissal of the plaintiff's administrative segregation of over three years, the 10th Circuit pointed to several other cases in which trial courts erred in dismissing inmates' Due Process claims based on segregated housing assignment ranging between 75 days and three years. *Id.* (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) and *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006)). However, other cases have held that far more extended confinements in administrative segregation did not suffice to state a due process claim. *See, e.g., Jordan v. Fed. Bureau of Prisons,* 191 F. App'x 639, 652 (10th Cir. 2006) (holding that a five-year period of administrative segregation did not amount to an atypical, significant hardship given the legitimate penological interest of investigating inmate's involvement in prison murder).

Nonetheless, here Plaintiff alleges that, in total, he was placed in administrative segregation for 377 days, or just over a year. As such the court finds that this is not a clear case where Plaintiff's allegations of the duration of his segregation fail to state a liberty interest as a matter of law. *See Sandin,* 515 U.S. at 486 (30 days of segregation insufficient as a matter of law); *Clayton v. Ward,* 232 F. App'x 827, 832 (10th Cir. 2007) (twenty-six day stay in segregation did not assert a liberty interest where the stay "was of relatively a short duration" and no facts were alleged that the confinement was an atypical and significant hardship). Rather, what is clear is that this is a case where Plaintiff's allegations require the court to "conduct an evidentiary analysis to determine

whether the duration of the confinement was itself atypical and significant." *Payne,* 266 F. App'x at 728 (citing *Trujillo,* 465 F.3d at 1225). This is simply an analysis that cannot be conducted at this stage of the litigation. *Id.* (holding that the district court improperly dismissed an inmate's claims on the pleadings without considering whether the duration of confinement in administrative segregation amounted to an atypical and significant hardship).

Altogether, the court first finds that the *DiMarco* factors do not fall clearly in either parties' favor. Moreover, the court finds that the duration of Plaintiff's confinement in administrative segregation alone may implicate a liberty interest. Accordingly, the court finds that, at this juncture, dismissal for failure to state a liberty interest would be improper.

### b.      Adequate Procedural Protections

Even if a protected liberty interest exists, Plaintiff must still prove that the procedures attendant to the deprivation of that liberty interest were constitutionally inadequate. Whether such procedures are constitutionally adequate is a flexible determination driven by the demands of the particular situation. *Wilkinson,* 545 U.S. at 224 (applying the traditional framework governing procedural due process from *Mathews v. Eldridge,* 424 U.S. 319 (1976)). However, because a prison inmate's liberty is already limited in significant way, the process necessary for the deprivation of a prison inmate's liberty interest in the conditions of his confinement, "while more than minimal, must be evaluated, nonetheless, within the context of the prison system and its attendant curtailment of liberties." *Id.* at 224-25. Therefore, due process in a prison conditions case is satisfied where the government allows: "(1) a sufficient initial level of process, i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to

the decision; and (3) safety and security concerns to be weighed as part of the placement decision." *DiMarco*, 473 F.3d at 1344 (citing *Wilkinson*, 545 U.S. at 226–27)).

Further, where an inmate's placement in administrative segregation is prolonged or indefinite, due process requires some sort of periodic review of his status. *See Hewitt v. Helms,* 459 U.S. 460, 477 n.9 (1983) *overruled in part by Sandin,* 515 U.S. 472; *see also Mcclary v. Kelly,* 237 F.3d 185, 186 (2d Cir. 2001); *Blevins v. Reid,* No. 06–cv–00969–MSK–KMT, 2008 WL 2428941, at *7–8 (D. Colo. 2008). Moreover, courts have recognized that such reviews may not merely be arbitrary or a sham, but have instead found that "due process requires that [an inmate's] situation be reviewed in a meaningful way." *Kelly v. Brewer,* 525 F.2d 394, 400 (8th Cir. 1975); *Toevs v. Reid,* No. 06–cv–01620–CBS–KMT, 2009 WL 598258, at *8 (Mar. 6, 2009) (finding an unresolved issue of fact as to whether the plaintiff received meaningful reviews of his administrative segregation status, rather than sham reviews).

Here Plaintiff's challenge to the process he received is two-fold. First, Plaintiff alleges that the procedures utilized pursuant to his initial placement in administrative segregation were inadequate because "no evidence of [his] participation in any conspiracy was presented" and because "the notice [he] received prior to his [administrative segregation] hearing was so vague that there was no way [he] could have formulated any possible defense to the charges against him." (Compl. 6–7.) Thereafter, Plaintiff alleges that, although he was afforded periodic reviews of his administrative segregation status, these reviews were "absolutely meaningless . . . [and] of no practical value" because they "provided him no notice and no opportunity to be heard" and always came out the same way. (*Id.* at 8.)

Although these allegations appear to be at least arguably conclusory, Defendants have altogether failed to address whether Plaintiff sufficiently alleges that these procedures were inadequate. Therefore, without more, the court finds that dismissal on grounds that Plaintiff was afforded sufficient procedural protections in connection with his administrative segregation would be improper. *See Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007) ("The defendant has the burden of showing that the plaintiff has failed to state a claim for relief"); *CollectACheck, Inc. v. Check Collection & Recovery, Inc.,* No. 09–cv–00186–DME–KMT, 2009 WL 1279329, at *3 (D. Colo. May 6, 2009) (same).

Therefore, to summarize, the court first finds that Plaintiff has raised sufficient allegations that he had a liberty interest in the conditions and duration of his administrative segregation. And second, the court finds that Defendants have failed to fulfill their burden of demonstrating that Plaintiff fails to sufficiently allege that the procedures afforded to him were constitutionally inadequate. Accordingly, the court finds that, at this juncture, Defendants' Motion in this regard is properly denied.

### 3. *Qualified Immunity*

Defendants finally assert that even if Plaintiff has sufficiently alleged due process claims against them, "Defendants may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Mot. at 12.)

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say an official action is protected by qualified immunity unless

the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'

*Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)) (internal citations omitted).  Here, the court finds that Supreme Court and Tenth Circuit case law existing at the time of Plaintiff was held in administrative segregation was sufficiently clear to provide Defendants with reasonable notice.

The Supreme Court's decision in *Sandin* marked a significant departure from prior case law by holding that liberty interests may arise from prison conditions that present an atypical, significant deprivation.  In *Wilkinson*, the Supreme Court again acknowledged that conditions of confinement, when viewed in combination, can impose an atypical and significant hardship that trigger due process rights.   545 U.S. 209.  Thus, in light of the above discussion of Plaintiff's claims, and because *Wilkinson* was decided in June 2005, well in advance of Plaintiff's administrative segregation beginning in June 2008, the court finds the contours of constitutional law were sufficiently clear to put Defendants on notice that the assignment of a prisoner to administrative segregation under conditions that imposed a significant and atypical hardship could give rise to a protected liberty interest.  *Thompson*, 2008 WL 901570, at *8*; Dodge,* ___ F. Supp. 2d ____, 2010 WL 924249, at *11.  Accordingly, at this juncture, the court finds that Defendants' should not be entitled to the defense of qualified immunity.  However, this does not foreclose Defendants from raising qualified immunity as a defense at a later point in this litigation once the specific circumstances of Plaintiff's confinement in administrative segregation become more clear through discovery and any subsequent evidentiary analysis.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendants' "Motion to Dismiss" (Doc. No. 17) be **GRANTED IN PART** insofar as all claims against Defendants Zavaras and Jones be DISMISSED with prejudice.

The court further

**RECOMMENDS** that Defendants' "Motion to Dismiss" (Doc. No. 17) be **DENIED** to the extent that the Motion seeks dismissal of all other claims and defendants.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate

Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 11th day of June, 2010.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge