IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–02220–WJM–KMT

DeANGELO HORTON,

     Plaintiff,

v.

AVCF STAFF MEMBER JOHN DOE (Warden Arellano's Designee),
CSP STAFF MEMBER JOHN DOE (Warden Jones' Designee),
AVCF STAFF MEMBER REEVES,
AVCF STAFF MEMBER KURTZ,
AVCF STAFF MEMBERS JOHN AND/OR JANE DOES (Committee Members for 30 Day Reviews),
CSP CASE MANAGER DEFUSCO,
CSP COMMITTEE CHAIRMAN OLSON, and
CSP STAFF MEMBERS JOHN AND/OR JANE DOES (Committee Members for 30 Day Reviews),
all defendants in their official and individual capacities,

     Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Kathleen M. Tafoya**

     This matter is before the court on Defendants Reeves, Kurtz, DeFusco, and Olson's

(collectively "Defendants") Motion for Summary Judgment.  (Doc. No. 89, filed Sept. 30, 2011

[Mot.].)  For the following reasons, the court recommends that Defendants' Motion be granted.

## FACTUAL BACKGROUND

Plaintiff is an inmate with the Colorado Department of Corrections (Doc. No. 3, filed Sept. 16, 2009 [Compl.], at 4.)  Before June 2008, Plaintiff was housed in the general population of the Arkansas Valley Correctional Facility (AVCF).  (*Id.*)  On June 2, 2008, Plaintiff was removed from AVCF's general population and placed into administrative segregation.  (*Id.*)  Plaintiff was served with a Notice for Administrative Segregation Hearing on June 16, 2008 (hereinafter, the "Pre-Hearing Notice").  (Mot., Ex. A-1, Affidavit of Carl Trujillo ["Trujillo Aff."], ¶ 6, at 11.)[1]  The Pre-Hearing Notice stated that Plaintiff was removed from AVCF's general population for attempting to introduce dangerous contraband into AVCF.  (*Id.*)

Plaintiff's administrative segregation hearing was held on June 23, 2008 at AVCF (hereinafter, at times, the "June 23, 2008 Hearing").  (*Id.*¶ 3, at 13.)  The hearing committee that presided over the June 23, 2008 Hearing unanimously decided, based largely on a single report written by Stacy Buford, that there was substantial evidence to support Plaintiff's administrative segregation classification.  (*Id.* ¶¶ 18-19, at 13.)  On June 26, 2008, Plaintiff was provided with a Classification Summary, which included a summary of the committee members' decision, the evidence relied upon, and findings fact.  (*Id.* ¶ 21, at 13.)

---

[1] Mr. Trujillo's Affidavit includes three attachments.  Due to the manner in which Defendants filed Mr. Trujillo's Affidavit and attachments, as well as the fact that the attachments are not paginated, the court finds it difficult to precisely cite to the relevant portions of the attachments.  Accordingly, hereinafter, the court cites to Mr. Trujillo's Affidavit itself by paragraph number contained therein, but cites to the attachments according to the page numbers of the document scanned by the clerk of court.

Pursuant to the hearing committee's decision, Plaintiff was placed in administrative segregation at AVCF from June 24, 2008 to September 8, 2008. (*Id.* ¶ 23.) Pursuant to Administrative Regulation (AR) 600-02(IV)(Q), inmates are to receive administrative segregation review every seven days for the first two months of administrative segregation classification, and every 30 days thereafter. (*Id.* ¶ 26, at 27.) Plaintiff received eight reviews of his administrative segregation classification while he was housed at AVCF. (*Id.* ¶ 27, at 34-40.)

On September 8, 2008, Plaintiff was transferred to maximum administrative segregation at the Colorado State Penitentiary (CSP). (*Id.* ¶ 24.) Although the parties dispute the precise nature of administrative segregation at CSP, they agree that, for at least five days per week, an inmate is permitted one hour a day of exercise outside his cell, but otherwise remains in his cell for the remaining 23 hours of the day. (Mot. at 5; Resp. at 8.) Additionally, the parties agree that an inmate in administrative segregation takes all of his meals in his cell. (Mot. at 5; Doc. No. 111, filed Dec. 5, 2011, [Resp.] at 8.) They also agree that an inmate has at least some control over the light in his cell, although Plaintiff maintains that it cannot ever be turned completely off. (Mot. at 5; Resp. at 8.) Plaintiff concedes that, on December 17, 2008, he was hired as a Porter, which allowed him to work outside of his cell. (Mot. at 5, Ex. A-2, Affidavit of James Olson [Olson Aff.], ¶ 29; Resp. at 9.)[2] On the other hand, Defendants concede that

---

[2] Similar to Mr. Trujillo's Affidavit, Mr. Olson's Affidavit includes three attachments. Due to the manner in which Defendants filed Mr. Olson's Affidavit and attachments, as well as the fact that the attachments are not paginated, the court finds it difficult to precisely cite to the relevant portions of the attachments. Accordingly, hereinafter, the court cites to Mr. Olson's Affidavit itself by paragraph number contained therein, but cites to the attachments according to the page numbers of the document scanned by the clerk of court.

Plaintiff's visitations rights were suspended upon his arrival at CSP on September 8, 2008 and were not restored until March 17, 2009.  (Olson Aff ¶¶ 30-31.)

Administrative segregation at CSP is governed by Operational Memorandum (OM) 650-100, which establishes a six-level Quality of Life Level Program (QLLP).  (Olson Aff. ¶ 6.)  The QLLP is "[a] stratified, incentive based program based on behavior and program participation consisting of levels one through six."  (*Id.* at 7.)  Level One has the most restrictive conditions, and each successive level offers the inmate more privileges."  (*Id.* at 9-13.)  OM 650-100 provides that CSP inmates are reviewed periodically to determine whether they should be progressed through the six levels of the QLLP program.  (*Id.* ¶ 8.)

Plaintiff's administrative segregation status was first reviewed on September 12, 2008 and, thereafter, was reviewed monthly through May 27, 2009.  (*Id.* at 39-47.)  Defendant Defusco was involved in all of, and Defendant Olson was involved in at least the majority of,[3] Plaintiff's periodic reviews.  (*Id.* at 39-47.)

Defendant Olson maintains that the periodic reviews of Plaintiff's administrative segregation classification reflected that Plaintiff's behavior was consistently positive and appropriate.  (*Id.* ¶ 25.)  Plaintiff, on the other hand, maintains that his periodic reviews were "absolutely meaningless" because they "all said the same thing."  (Compl. at 8.)

---

[3] Based on his or her signature on several of Plaintiff's periodic review forms, it appears that a "K. Moore" participated as a committee member in lieu of Defendant Olson on several occassions.  (Olson Aff. at 39-41, 46-47.)  The court need not resolve this factual issue for purposes of this Recommendation.

On June 15, 2009, Plaintiff was transferred from CSP to the general population at SCF, pursuant to a discretionary Warden review.[4]   (Olson Aff. ¶ 26.)  Thus, beginning with his pre-hearing removal from the AVCF general population on June 2, 2008, through his transfer from CSP to SCF on June 15, 2009, Plaintiff spent a total of 377 days in administrative segregation.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on September 16, 2009.  His Complaint sets forth two claims, pursuant to 42 U.S.C. § 1983, alleging that Defendants—and former defendants Aristedes Zavaras, Susan Jones, and Mike Arellano—violated his Fourteenth Amendment Due Process rights.  (*See* Compl.)  More specifically, Plaintiff maintains that the duration and conditions of his confinement in administrative segregation "imposed an atypical and significant hardship in relation to the ordinary incidents of prison life."  (*Id.* at 6–7.)  Consequently, Plaintiff maintains that he was entitled to, but that Defendants failed to provide him with, procedural due process protections in two distinct contexts.  Claim One alleges that the procedures surrounding the June 23, 2008 Hearing were constitutionally deficient.  (*Id.* at 6-7.)  Claim Two alleges that the periodic reviews of Plaintiff's administrative segregation classification lacked due process. (*Id.* at 8-10.)

On August 24, 2010, District Judge Robert E. Blackburn dismissed Plaintiff's claims against former defendants Zavaras and Jones with prejudice based on Defendants' Motion to Dismiss, and also dismissed Plaintiff's claims against former defendant Arellano without

---

[4] Plaintiff maintains that this decision represented Plaintiff's "non-involvement and complete exauneration [sic] of alleged introduction of Drugs into State prison."  (Resp. at 8.)

prejudice for lack of service pursuant to Fed. R. Civ. P. 4(m).  (Doc. No. 36, filed Aug. 24, 2010.)  This case was subsequently assigned to District Judge William J. Martinez on February 9, 2011.  (Doc. No. 40.)

Defendants filed their present Motion on September 30, 2011.  (*See* Mot.)  After receiving several extensions of time, Plaintiff filed his Response on December 2, 2011.  (*See* Resp.)  Defendants filed their Reply on December 16, 2011.  (Doc. No. 111.)  Accordingly, this matter is ripe for the court's review and recommendation.[5]

## LEGAL STANDARDS

### A.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

_____

[5] On December 28, 2011, the court denied Plaintiff an extension of time to respond to Defendants' reply by noting that the Local Rules of this court do not permit the filing of a surreply without the court's leave, and otherwise finding that Defendants' Motion was fully briefed.  (Doc. No. 118.)

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**B.     *Summary Judgment Standard***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

In their Motion, Defendants argue that they are entitled to summary judgment on Plaintiff's claims because (1) none of the named defendants personally participated in the June 23, 2008 Hearing; (2) Defendant Reeves and Kurtz did not personally participate in the periodic reviews of Plaintiff's administrative segregation classification; (3) Plaintiff did not have a protected liberty interest in his placement in administrative segregation; (4) even assuming that Plaintiff did have such a protected liberty interest, the procedures used to review his administrative segregation status were not constitutionally deficient; and (5) even if Plaintiff had a protected liberty interest and the procedures were constitutionally deficient, they are entitled to qualified immunity. (*See* Mot.)

**A.** **Personal Participation**

First, Defendants argue that none of the named defendants personally participated in the administrative segregation hearing held on June 23, 2008 as required for liability under 42 U.S.C. §1983.  (Mot. at 7-8.)  Defendant also argue that Defendants Kurtz and Reeves did not personally participate in the periodic reviews of Plaintiff's administrative segregation classification.  (*Id.* at 9.)

Personal participation is an essential element of a § 1983 civil rights action.  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).   In other words, "for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established."  *Trujillo v. Williams,* 465 F.3d 1210, 1227 (10th Cir. 2006).

**1.** **Claim One – June 23, 2008 Administrative Segregation Hearing**

Plaintiff's Claim One maintains that his procedural due process rights were violated in connection with his June 23, 2008 Hearing because the Pre-Hearing Notice was too vague for Plaintiff to formulate a defense, and because there was "no evidence" that he was involved in the conspiracy to introduce drugs into AVCF.  (Compl. at 9.)  However, Defendant DeFusco was Plaintiff's case manager, and Defendant Olson was a committee chairperson, at CSP.  (Mot. at

9

6.)[6]  Thus, Defendants DeFusco and Olson obviously could not have been involved in any

violation of Plaintiff's constitutional rights until *after* Plaintiff was transferred to CSP on

September 8, 2008.  In fact, although Plaintiff now ostensibly maintains that Defendants

DeFusco and Olson were somehow complicit in the allegedly unconstitutional June 23, 2008

Hearing (Resp. at 9), Claim One does not include any allegations that Defendants DeFusco and

Olson took part in that alleged constitutional violation (Compl. at 6-7).

Defendants Reeves and Kurtz are criminal investigators with the CDOC and, at the time

of the conspiracy to introduce drugs into AVCF, were assigned to AVCF.  (Mot., Ex. A-3 at 2,

A-4 at 2; Resp. at 10.)  Additionally, Plaintiff has set forth evidence that Defendants Reeves and

Kurtz interrogated Plaintiff while he was incarcerated in administrative segregation before his

June 23, 2008 Hearing.  (Doc. No. 47, filed April 7, 2011, Supplemental Affidavit of DeAngelo

Horton[7] [hereinafter "Horton Supp. Aff."] at 14.)  Claim One, however, challenges the

constitutional sufficiency of the June 23, 2008 Hearing—including the Pre-Hearing Notice—that

---

[6] Although Plaintiff purportedly disputes this portion of Defendants' statement of undisputed material facts, the court finds that the disputes raised are not genuine, and that Plaintiff sets forth only non-responsive legal arguments.  (Resp. at 9.)

[7] Document Number 47, at pages 4-22, is Plaintiff's proposed "Prisoner's Amended Complaint," which he was denied leave to file.  (*See* Doc. No. 113, filed Dec. 14, 2011.) However, in his Order affirming and adopting this court's Recommendation that Plaintiff be denied leave to amend, District Judge Martinez ruled that Plaintiff's proposed amended complaint should be considered as a supplemental affidavit in opposition to Defendants' Motion for Summary Judgment because it is verified and included additional factual allegations of personal participation of the named defendants.  (*Id.* at 6.)  Accordingly, while actually titled "Prisoner's Amended Complaint," hereinafter, the court refers to this document as "Supplemental Affidavit of DeAngelo Horton" or "Horton Supp. Aff."

resulted in his administrative segregation classification.  (Compl. at 6-7.)  Thus, to have

personally participated in the alleged deprivation of Plaintiff's constitutional rights, Defendants

Reeves and Kurtz must have either prepared the Pre-Hearing Notice or presided over the June

23, 2008 Hearing and made the decision to classify Plaintiff to administrative segregation.

Plaintiff has declared under oath that, in addition to being CDOC investigators,

Defendant Reeves and Kurtz were the hearing board officers who presided over the June 23,

2008 Hearing.  (Horton Supp. Aff. at 14-15.)  Mr. Trujillo, on the other hand, has also sworn

under oath that he served as the chairperson of the June 23, 2008 Hearing, and that Mr. Campell

and Mr. Enriquez were the remaining committee members.  (Trujillo Aff. ¶ 3.)  Additionally,

Defendants have provided the court with the Classification Summary from the June 23, 2008

Hearing, which explicitly states that the "committee members present" included Mr. Trujillo,

Mr. Enriquez, and Mr. Campbell.  (*Id.* at 13.)  Mr. Trujillo confirmed the hearing committee's

decision to assign Plaintiff to administrative segregation by signing the Classification Summary

on June 24, 2008.  (*Id.*)  Plaintiff also signed the Classification Summary two days later on June

26, 2008  to indicate his receipt thereof.  (*Id.*)

Having review the parties' respective evidence, the court finds that there is no *genuine*

dispute as to whether Defendants Reeves and Kurtz were the hearing officers presiding over the

June 23, 2008 hearing.  Plaintiff's mere declaration, nearly two years after the fact, is clearly

rebutted by documentary evidence, signed contemporaneously with the June 23, 2008 Hearing

by both Mr. Trujillo *and* Plaintiff, establishing that Mr. Trujillo, Mr. Campell, and Mr. Enriquez

were the committee members presiding over the June 23, 2008 hearing.  (Trujillo Aff. ¶ 3, at 13.)

Consequently, the court finds, as a matter of undisputed material fact, that, Defendants Reeves and Kurtz were not, and that Mr. Trujillo, Mr. Campbell and Mr. Enriquez were, the committee members who presided over the June 23, 2008 hearing, and made the decision regarding Plaintiff's assignment to administrative segregation.  (*Id.*)

Additionally, Defendants have set forth evidence indicating that the Pre-Hearing Notice was not prepared by Defendants Kurtz and Reeves, but was instead prepared by Case Manager, and former defendant, Beverly Graham, and signed by Associate Warden John Davis.  (*Id.* ¶ 6, at 11.)  Finally, the Classification Summary indicates that neither Defendant Kurtz or Reeves were otherwise involved in the June 23, 2008 Hearing.  (*Id.* at 13.)  Plaintiff has not set forth any evidence to the contrary.  Therefore, the court finds that Plaintiff has failed to establish that Defendants Reeves and Kurtz personally participated in the alleged violation of his constitutional rights relating to the June 23, 2008 Hearing.

Altogether, for the reasons outlined above, the court finds that Plaintiff has failed to establish that Defendants Olson, DeFusco, Reeves, and Kurtz personally participated in the alleged violation of his constitutional rights arising from the June 23, 2008 Hearing. Accordingly, the court finds Defendant's Motion is properly granted as to these remaining named defendants on Plaintiff's Claim One.

### 2.      *Claim Two - Periodic Reviews*

Plaintiff's Claim Two alleges that the periodic reviews of his administrative segregation classification between June 30, 2008 and June 15, 2009 were "periodic but were absolutely meaningless," insofar as they "all said the same thing," allowed Plaintiff "no notice and no

opportunity to be heard," and "none of them could have secured [his] release from [administrative segregation]." (Compl. at 8.) As CDOC investigators, neither Defendant Reeves or Defendant Kurtz were involved in the periodic reviews of Plaintiff's administrative segregation classification. (Mot. Ex. A-3 & A-4; ) Indeed, in Claim Two, Plaintiff does not even allege that Defendants Reeves or Kurtz were involved in the periodic reviews at either AVCF or CSP. (Compl. at 9.) Nor does he argue that they were involved in the periodic reviews in his Response. (Resp. at 10-13.) Accordingly, to the extent that Plaintiff maintains that Defendants Reeves and Kurtz should be held liable for the allegedly unconstitutional periodic reviews of his administrative segregation placement (*see* Resp. at 9), the court finds that Defendants Reeves and Kurtz did not personally participate in those reviews. Therefore, the court finds that Defendants' Motion is properly granted to Defendants Reeves and Kurtz on Plaintiff's Claim Two.

## B.    *Qualified Immunity*

Defendants conceded that Defendants Olson and DeFusco were involved in the periodic reviews of Plaintiff's administrative segregation classification at CSP from September 8, 2008 until Plaintiff's transfer to SCF on June 15, 2009. (*See* Mot. at 5, 9; Reply at 8.) However, they argue that Plaintiff did not have a protected liberty interest in his placement in administrative segregation; that, even if Plaintiff did have a protected liberty interest, the periodic reviews of his administrative segregation classification were not constitutionally deficient; and, finally, that, even if Plaintiff could establish both of these elements, Defendants Olson and DeFusco are entitled to qualified immunity for their actions.

13

In determining whether a defendant is entitled to summary qualified immunity, the court conducts a two-pronged inquiry.

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendants alleged misconduct. With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented.

*Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009); *see also Pearson v. Callahan,* 555 U.S. 223, 232 (2009). "A reviewing court may 'exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Herrera,* 589 F.3d at 1070 (quoting *Pearson*, 555 U.S. at 236). "'Qualified immunity is applicable unless' the plaintiff can satisfy both prongs of the inquiry." *Id.* (quoting *Pearson*, 555 U.S. at 232).

The court finds that based on a recent Tenth Circuit case, *Toevs v. Reid,* 646 F.3d 752, 755 (10th Cir. 2011), Defendants Olson and DeFusco are entitled to qualified immunity because, under the second qualified immunity prong, Plaintiff's constitutional rights were not clearly established at the time of Defendants Olson and DeFusco's purported misconduct.

In *Toevs,* the Tenth Circuit considered the constitutional sufficiency of the same program at issue here—the QLLP. *Id.* at 753-54. The *Toevs* plaintiff was placed into administrative segregation, pursuant to the QLLP, after attempting to escape. *Id.* at 754. Due to several progressions and regressions in the QLLP, the plaintiff remained in the QLLP for seven

years—from 2002 to 2009.[8]  *Id.* at 754, 757.  The plaintiff complained that he was denied his constitutional right to "a meaningful periodic review of his confinement in administrative segregation because the reviews . . . were perfunctory, meaningless, and all said the same thing." *Id.*

After finding that the plaintiff's seven-year placement "in the type of conditions he alleged[] established a protected liberty interest," the court considered whether the plaintiff was afforded the meaningful periodic review of his administrative segregation placement, as required by the Supreme Court case *Hewitt v. Helms,* 459 U.S. 460 (1983), *abrogated in part on other grounds by Sandin v. Conner,* 515 U.S. 472, 483 (1995).  *Id.* at 757.  The court noted that unlike punitive segregation, "administrative segregation is not punitive and it looks to the present and future rather than to the past."  *Id.* (quoting *Kelly v. Brewer,* 525 F.3d 394, 399 (8th Cir. 1975)).  Thus, the court held that "a 'meaningful' review is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to segregation, determines, without preconception, whether that placement remains warranted."  *Id.*  The court expounded that while "what would be required for an intelligent and meaningful review of the case of one inmate might not be required in the case of another," where "the goal of the placement is behavior modification, the review should provide a guide for future behavior

_____

[8] Only QLLP levels 1-3 are classified as administrative segregation. *Id.* at 754.  Thus, while Plaintiff's 377 days assignment to administrative segregation appears to pale in comparison the *Toevs* plaintiff's seven-year stay in the QLLP, these facts are different in kind. A direct comparison of the duration of Plaintiff's and the *Toevs* plaintiff's respective assignments to *administrative segregation* is not possible because the Tenth Circuit did not directly address that question in *Toevs.*

(i.e., it should give the prisoner some idea of the requirements for, and his progress toward, more favorable placement)." *Id.*

Based on this framework, the Tenth Circuit determined, in a "close question," that the *Toevs* plaintiff did not receive meaningful periodic reviews while in administrative segregation. *Id.* at 759. The court found "one serious omission" in the plaintiff's review forms—they "never informed Mr. Toevs of the reasons why he was recommended for or denied progression, so that he would have a guide for his future behavior." *Id.* The court was not persuaded by the defendants' argument that the review forms did "not reflect all factors considered in the inmate's review, but only document significant benchmarks in the inmate's progress through the QLLP." *Id.* Instead the Tenth Circuit noted that the plaintiff's review forms never stated why he was being held at a certain QLLP level or why he was being advanced to a higher QLLP level. *Id.* at 759-760. Accordingly, the court concluded that the periodic reviews of the plaintiff's administrative segregation classification were not meaningful. *Id.* at 760.

Nevertheless, the Tenth Circuit concluded that the *Toevs* defendants were entitled to qualified immunity from liability for their involvement in the unconstitutional periodic reviews. *Id.* at 760-61. "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Id.* (quoting *Walker v. City of Orem,* 451 F.3d 1139, 1151 (10th Cir. 2006). At its heart, the "'salient question . . . is whether the state of the law [at the time of the actions] gave respondents fair warning that their [conduct] was unconstitutional." *Id.* at 761 (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).

The Tenth Circuit found that although *Hewitt* established that meaningful periodic reviews were required for indefinite administrative segregation classifications, it (the Tenth Circuit) had not "previously interpreted 'meaningful' to require officials to inform prisoners of the reasons for their continued placement." *Id.* Thus, because it could not say that "the state of the law from 2005 to 2009[9] gave defendants fair notice that the QLLP review process was not meaningful," the court concluded that the law was not clearly established and that, consequently, the defendants were entitled to qualified immunity." *Id.*

For purposes of this Recommendation, the court assumes, without deciding, that Plaintiff's 377 day placement in administrative segregation establishes a liberty interest.[10] Given that assumption, the court notes—although it does not explicitly decide—that it is likely that the periodic reviews of Plaintiff's placement in administrative segregation were constitutionally inadequate.

---

[9] The court limited its analysis to this period because the district court had found that the plaintiff claims were time-barred to the extent they alleged constitutional violation based on pre-2005 conduct.

[10] If the court were required to resolve this question, it would likely present a very close call. The relevant factors for resolving this question include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. *See Estate of DiMarco v. Wy. Dept. of Corrs.,* 473 F.3d 1334, 1342 (10th Cir. 2007). Here, factor one would favor Defendants as prison security is a legitimate penological concern and was threatened by Plaintiff's involvement in a conspiracy to introduce drugs into AVCF. Factor three also favors Defendants for the reasons outlined in this court's June 11, 2010 Recommendation. (Doc. No 34 at 17.) However, factor two appears to raise a factual dispute, and factor four likely favors Plaintiff as his placement in administrative segregation was open-ended, subject to his ability to progress through the QLLP. *Toevs,* 646 F.3d at 757 (finding the fact that "[p]lacement in the QLLP is indefinite" to be "*determinative.*") (emphasis added).

Plaintiff was placed into administrative segregation because, in light of his involvement in a conspiracy to introduce illegal contraband into AVCF, he posed a serious threat to the security of the CDOC facilities.  (Trujillo Aff. at 13; Olson Aff. at 39-47.)  Much like in *Toevs,* Plaintiff's progression through the [QLLP] system was to be "determined by his behavior." (Olson Aff. at 39-47.)  Nevertheless, Plaintiff's periodic review forms did not provide any meaningful information as to why he was being held at his current QLLP level or progressed to a higher QLLP level.  (*Id.*)  Rather, although they noted *when* he was progressed to a higher level, his periodic "review forms largely contain the same information, with occasional updates." *Toevs,* 646 F.3d at 759.  And although "certain classes were recommended," *id.* at 760—namely anger management, crime impact, and prison life skills courses (Olson Aff. at 39-47)—"there was no indication that they had to be completed before progression," *Toevs,* 646 F.3d at 761.  In fact, Plaintiff was progressed up to Level 3 before he was even enrolled in any classes at all. (Olson Aff. at 39-47); *Toevs,* 646 F.3d at 761.  Thus, given the near parity of facts between this case and *Toevs,* the court finds that the periodic reviews of Plaintiff's placement in administrative segregation were not meaningful.

Nevertheless, even assuming that Plaintiff can establish a liberty interest and that the periodic reviews were not meaningful, like in *Toevs,* the court finds that Defendants Olson and DeFusco are entitled to qualified immunity for their actions.  Defendants Olson and DeFusco's involvement in Plaintiff's periodic reviews indisputably occurred between September 8, 2008 and June 15, 2009—the time frame of Plaintiff's stay at CSP.  *Toevs* clearly provides that the requirement that periodic reviews "inform prisoners of the reasons for their continued

18

placement" was not clearly established at that time.  646 F.3d at760-61.  Accordingly, in light of

that conclusion, the court finds that Defendants Olson and DeFusco are entitled to qualified

immunity for their actions.  Consequently, the court finds that summary judgment is properly

granted in favor of Defendants Olson and DeFusco as to Plaintiff's Claim Two.

### C.      *Doe Defendants*

The court notes that several unnamed John and Jane Doe defendants still remain.  (*See*

Compl.)  However, the time to amend pleadings and complete discovery has now passed, and,

save for one unsuccessful attempt (*see* Doc. 113), Plaintiff has not moved to amend his

complaint to identify these defendants.  Furthermore, Plaintiff's § 1983 claims are governed by

the two-year statute of limitations codified at Colo. Rev. Stat. § 13-80-102.  *Workman v. Jordan*,

32 F.3d 475, 482 (10th Cir. 1994).  More than two years have passed since Plaintiff was removed

from administrative segregation and transferred to the general population at SCF.  Therefore, the

statute of limitations has run with respect to the John and Jane Doe defendants.  Accordingly, the

court recommends that Plaintiff's § 1983 claims against the remaining John and Jane Doe

defendants be dismissed *sua sponte*.  *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)

("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense – such

as statute of limitations – only when the defense is obvious from the face of the complaint and no

further factual record is required to be developed."); *Garrett v. Fleming*, 362 F.3d 692, 696 (10th

Cir. 2004) (substitution of named defendants for previously unknown John Doe defendants did

not relate back under Fed. R. Civ. P. 15(c), and was therefore time-barred, because a lack of

knowledge of the intended defendant's identity is not a "mistake concerning the identity of the

proper party" pursuant to Rule 15(c)(3)(B)); *see also Tapia-Ortiz v. Doe*, 171 F.3d 150, 151-52 (2d Cir. 1999).

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that Defendants' Motion for Summary Judgment (Doc. No. 89) be GRANTED and that summary judgment be entered in favor of Defendants Kurtz, Reeves, Olson, and Defusco on all claims.

Further, the court respectfully

RECOMMENDS that Plaintiff's claims against the remaining unnamed John and Jane Doe defendants be dismissed *sua sponte.*

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 3rd day of January, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge